**COMMONWEALTH of Pennsylvania**

v.

**Shawn MURRAY, Appellant.**

Superior Court of Pennsylvania.

Argued July 10, 2007.

Filed Oct. 12, 2007.

Reargument Denied Dec. 13, 2007.

Anthony J. Petrone, Philadelphia, for appellant.

Regina Oberholzer, Asst. Dist. Atty., Philadelphia, for Com., appellee.

BEFORE: JOYCE,* PANELLA and POPOVICH, JJ.

* Judge JOYCE did not participate in the consideration or decision of this case.

OPINION BY PANELLA, J.:

¶1 Appellant, Shawn Murray, appeals from the judgment of sentence entered on December 13, 2006, by the Honorable Leon W. Tucker, Court of Common Pleas of Philadelphia County. After careful review, we affirm.

¶2 On June 26, 2006, Officer James Keith and his partner, Officer Bunch, were sitting in a marked police cruiser just off the intersection of 57th and Baltimore in Philadelphia, a known narcotics area, when they observed a Range Rover make a right turn, without signaling, northbound onto 57th Street. Officer Keith then followed the Range Rover for two blocks, at which time he activated the cruiser's overhead lights and the Range Rover pulled over.

¶3 As Officer Keith sat in his vehicle he shined a light onto the Range Rover, but the SUV's tinted windows made it difficult to see inside. Due to the tinted windows, Officer Keith could not "actually see what [Murray] was doing," but as he alighted from the cruiser he observed "a lot of movement in the vehicle." N.T., Suppression Hearing, 11/14/06, at 6. Due to the excessive movement in the vehicle, Officer Keith "pulled [Murray, the lone occupant of the vehicle] out ... and frisked him to make sure he had no weapon" so as to ensure the safety of he and his partner. *Id.*, at 7. Finding no weapon, but still concerned for his safety and that of his partner, Officer Keith then entered the vehicle and "checked the immediate area where [Murray] was sitting at [sic] to his immediate right, arm rest, pulled the top of the arm rest up and found a black Glock, model 23, .40 caliber handgun loaded with 14 live rounds." *Id.* Immediately after finding the weapon, Officer Keith asked Murray why he had the weapon and

Murray responded, "you know how it is." *Id.*, at 9. Murray was subsequently arrested and charged with various offenses.

¶4 On September 14, 2006, Murray filed a motion to suppress the handgun and his statement. The trial court conducted a suppression hearing on November 14, 2006, and denied Murray's suppression motion. Immediately thereafter, the case proceeded to a bench trial and the trial court found Murray guilty of carrying a firearm without a license,[1] carrying a firearm on a public street in Philadelphia,[2] and possession of a firearm with an altered manufacturer's number.[3] On December 13, 2006, the trial court sentenced Murray to an aggregate period of 18 to 36 months imprisonment. This timely appeal followed.

¶5 On appeal, Murray raises the following issues for our review:

I. DID THE TRIAL COURT ERR IN FAILING TO SUPPRESS A HANDGUN FOUND SECRETED INSIDE THE CENTER CONSOLE OF THE VEHICLE THE DEFENDANT WAS PERMISSIVELY OPERATING BECAUSE HIS MOVEMENT INSIDE THE VEHICLE DURING A ROUTINE TRAFFIC STOP DID NOT PROVIDE A SUFFICIENT BASIS FOR THE OFFICER TO REASONABLY BELIEVE THAT THE DEFENDANT WAS ARMED AND DANGEROUS SO AS TO JUSTIFY THE SEARCH OF THE VEHICLE'S INTERIOR?

. . .

I. DID THE TRIAL COURT ERR IN FAILING TO SUPPRESS AN INCRIMINATING STATEMENT MADE

---

1. 18 PA. CONS.STAT.ANN. § 6106.

2. 18 PA. CONS.STAT.ANN. § 6108.

3. 18 PA. CONS.STAT.ANN. § 6110.2.

BY THE DEFENDANT REGARDING HIS OWNERSHIP OF THE SECRETED HANDGUN IN RESPONSE TO POLICE QUESTIONING WHILE HE WAS IN CUSTODY AND BEFORE HE WAS ADVISED OF HIS *MIRANDA* RIGHTS?

. . .

Appellant's Brief, at 4.

¶ 6 We recently set forth the appropriate standard of review where an appellant appeals the denial of a suppression motion:

[W]e are limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. We may consider the evidence of the witnesses offered by the prosecution, as verdict winner, and only so much of the defense evidence that remains uncontradicted when read in the context of the record as a whole. We are bound by facts supported by the record and may reverse only if the legal conclusions reached by the court below were erroneous.

*Commonwealth v. McAliley,* 919 A.2d 272, 275–276 (Pa.Super.2007) (citation omitted).

¶ 7 As stated above, Murray first argues that the trial court erred in failing to suppress the handgun found in his vehicle. In support of his argument, Murray contends the circumstances of the traffic stop failed to provide the officer with a reasonable belief that he was dangerous so as to justify a search for weapons in the vehicle's passenger compartment.

¶ 8 The trial court, in its well-written and comprehensive opinion, relied on *Michigan v. Long,* 463 U.S. 1032, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983), and *Commonwealth v. Morris,* 537 Pa. 417, 644

A.2d 721 (1994), *cert. denied,* 513 U.S. 1031, 115 S.Ct. 610, 130 L.Ed.2d 519 (1994), to justify the search of the passenger compartment for weapons.

¶ 9 In *Michigan,* the United States Supreme Court articulated the standard under which police may search the passenger compartment of a vehicle for weapons during roadside encounters with motorists. The Supreme Court concluded that pursuant to *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968),[4] a warrantless search of a passenger compartment is permissible under certain circumstances. Specifically, the Court described the scenario of a permissible roadside search as follows:

Our past cases indicate then that protection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. *These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons.* See *Terry,* 392 U.S., at 21, 88 S.Ct., at 1880. "[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others

---

**4.** In *Terry,* the United States Supreme Court held that police may stop and frisk a person

when they have reasonable suspicion that criminal activity is afoot.

was in danger." *Id.*, at 27, 88 S.Ct., at 1883.

*Michigan,* 463 U.S. at 1049–1050, 103 S.Ct. 3469 (footnote omitted) (emphasis added).

¶ 10 In *Morris,* the Pennsylvania Supreme Court concluded that the rule announced in *Michigan* comports with Article 1, § 8 of the Pennsylvania Constitution. Consequently, our Supreme Court in *Morris* upheld a search for weapons in the passenger compartment of a vehicle in the situation where, upon pulling over, the driver leaned "briefly to his right and towards the floor near the center of the car" and "reach[ed] quickly between his legs when he was ordered to place his hands on the steering wheel" because these acts "were ... consistent with an attempt either to conceal or reach for a weapon." 537 Pa. at 421, 644 A.2d at 723. Additionally, the Court noted that a pipe between the driver's seat and the door tended "to indicate that appellant might have access to other weapons in the passenger compartment." *Id.*

¶ 11 Similarly, in *Commonwealth v. Mesa,* 453 Pa.Super. 147, 683 A.2d 643 (1996), a panel of this Court found that the officer provided articulable suspicion to conclude that the appellant might be armed and dangerous, thus justifying a pat down search of his person, due to observations of the appellant moving about inside the car. The panel reasoned as follows:

> Lamberton testified that as he was approaching the Beretta, appellant was moving around a great deal and this led him to believe that appellant could be armed and dangerous and was attempting to conceal something. In *Commonwealth v. Morris,* 422 Pa.Super. 343, 619 A.2d 709 (1992), *appeal denied,* 534 Pa. 654, 627 A.2d 731 (1993), this court held that when a police officer observed the appellant's furtive movements in stuffing a brown bag under the front seat of his vehicle, the subsequent search of his person was justified under *Terry.* *Morris, Id.,* 619 A.2d at 712. Since the appellant's actions in *Morris* supported the officer's belief that his safety was in jeopardy and, at the very least, articulable suspicion that the bag contained "contraband or a dangerous weapon", *Id.,* 619 A.2d at 712–13, we found that the officer was entitled to search the appellant and the appellant's vehicle for his own protection. *Id.* The present case is similar to *Morris,* and we find that Detective Lamberton had "articulable" suspicion that appellant might be armed and dangerous, warranting a *Terry* search for his protection.

683 A.2d at 646.

¶ 12 In this case, before Officer Keith alighted from his marked police cruiser, at approximately 9:15 p.m. in "a high narcotics area," he shined a light onto Murray's vehicle. N.T., Suppression Hearing, 11/14/06, at 11, 15. Due to the tinted windows, Officer Keith could not "actually see what [Murray] was doing," but was able to discern "a lot of movement in the vehicle." *Id.*, at 6. Due to the excessive movement in the vehicle, Officer Keith "pulled [Murray] out of the vehicle and frisked him to make sure he had no weapon" so as to ensure the safety of Keith and his partner. *Id.*, at 7. Officer Keith also "checked the immediate area where [Murray] was sitting at [sic] to his immediate right, arm rest, pulled the top of the arm rest up and found a black Glock, model 23, .40 caliber handgun loaded with 14 live rounds." *Id.*

¶ 13 The danger of approaching a vehicle with tinted windows has been, as the trial court notes in its opinion, succinctly articulated by the United States Court of Appeals for the Fourth Circuit as follows:

> When, during already dangerous traffic stops, officers must approach vehicles

whose occupants and interiors are blocked from view by tinted windows, the potential harm to which the officers are exposed increases exponentially, to the point, we believe, of unconscionability. *Indeed, we can conceive of almost nothing more dangerous to a law enforcement officer in the context of a traffic stop than approaching an automobile whose passenger compartment is entirely hidden from the officer's view by darkly tinted windows.* As the officer exits his cruiser and proceeds toward the tinted-windowed vehicle, he has no way of knowing whether the vehicle's driver is fumbling for his driver's license or reaching for a gun; he does not know whether he is about to encounter a single law-abiding citizen or to be ambushed by a car-full of armed assailants. He literally does not even know whether a weapon has been trained on him from the moment the stop was initiated.

*United States v. Stanfield,* 109 F.3d 976, 981 (4th Cir.1997), *cert. denied,* 522 U.S. 857, 118 S.Ct. 156, 139 L.Ed.2d 101 (1997) (emphasis in original).

■ ¶14 We find that Officer Keith articulated sufficient facts to lead him to properly conclude that Murray could have been armed and dangerous, thus justifying a limited search for weapons in the passenger compartment of the vehicle. Specifically, the knowledge of the neighborhood being a well-known narcotics area, when coupled with the excessive movement inside the vehicle and hour of night, raised serious and obvious safety concerns that justified a search for weapons. *See, e.g., United States v. Caruthers,* 458 F.3d 459, 466 (6th Cir.2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 752, 166 L.Ed.2d 582 (2006) (furtive movements made in response to a police presence may properly contribute to an officer's suspicions); *United States v. Evans,* 994 F.2d 317, 321 (7th Cir.1993), *cert. denied,* 510 U.S. 927, 114 S.Ct. 335, 126 L.Ed.2d 280 (1993) (officers properly executed a *Terry* search on driver and car when driver leaned forward as if reaching or concealing something). Accordingly, we find no error in the trial court's refusal to suppress the handgun.[5]

■ ¶15 In Murray's second and final issue raised on appeal, he maintains that the trial court erred in failing to suppress his incriminating statement to Officer Keith as he was not advised of his *Miranda*[6] rights prior to the officer's question. Murray maintains that at the time Officer Keith asked him why he had the gun in the car that he was under arrest. We disagree.

¶16 The record reveals that Officer Keith found the handgun and then immediately asked Murray the reason he had the weapon in the car. *See N.T.,* Suppression Hearing, 11/14/06, at 9. As stated above, Murray responded, "you know how it is." *Id.*

¶17 The search for weapons was, as mentioned, a valid *Terry* search. In other words, Murray was the subject of an investigatory detention when the officer asked him why he had the handgun. *See Commonwealth v. Cook,* 558 Pa. 50, 57, 735 A.2d 673, 677 (1999) ("Following the

---

**5.** In his brief, Murray correctly notes that this case is not about the warrantless search of an entire automobile for contraband, which would necessitate a probable cause standard; rather, we are dealing with a limited search for weapons pursuant to the standard of reasonable suspicion from *Michigan v. Long.*

*See Commonwealth v. Morris,* 537 Pa. 417, 421 n. 2, 644 A.2d 721, 723 n. 2 (1994), *cert. denied,* 513 U.S. 1031, 115 S.Ct. 610, 130 L.Ed.2d 519 (1994).

**6.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

dictates of *Terry*, Pennsylvania Courts recognize that under limited circumstances police are justified in investigating a situation, so long as the police officers reasonably believe that criminal activity is afoot."). *See also Commonwealth v. Melson*, 383 Pa.Super. 139, 556 A.2d 836, 845 n. 3 (1989), *appeal denied*, 525 Pa. 579, 575 A.2d 111 (1990) (non-custodial interrogations are also called *Terry* stops or investigatory detentions). It is well-established that "the dictates of *Miranda* do not attach during an investigatory detention." *Commonwealth v. Kondash*, 808 A.2d 943, 948 (Pa.Super.2002) (citations omitted). As such, Murray's argument fails.

¶ 18 Judgment of sentence affirmed. Jurisdiction relinquished.