J-A28038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SAMUEL CARROLL FOSTER, | |
| Appellant | No. 1693 EDA 2014 |

Appeal from the Judgment of Sentence April 25, 2014
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0004626-2012

BEFORE:  GANTMAN, P.J., PANELLA, and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED JANUARY 08, 2016**

Samuel Carroll Foster ("Appellant") appeals from the judgment of sentence imposed in this road-rage incident after the trial court found him guilty of two counts of driving under the influence ("DUI").[1]  On appeal, Appellant argues that the suppression court erred in admitting statements he made at the scene, evidence of his blood alcohol content ("BAC"), and contraband found in his vehicle.  We affirm.

The trial judge, who presided over the suppression hearing and the bench trial, made the following findings of fact:

_____

[1]  Appellant was convicted of 75 Pa.C.S. § 3802(d)(1)(i) (any amount of a schedule I controlled substance), and § 3802(d)(3) (combination of drugs and alcohol).

Trooper Gibson has been employed by the Pennsylvania State Police since February 2009, and was stationed at Troop K Media barracks.

This Trooper had received education and/or training regarding Driving Under the Influence (DUI) at the State Police Academy. And, has on almost a weekly basis observed people under the influence of alcohol and/or drugs.

This Trooper has been trained at the Academy in conducting field sobriety tests and has administered hundreds of such tests in his career.

Trooper Gibson was uniformed and on duty on March 9, 2012 at approximately 10:31 p.m. while operating a marked State Police vehicle in a southbound direction on the Media by-pass where it approached the intersection with Baltimore Pike.

At the trooper's vantage point he observed a white Chevy minivan proceeding southbound when it drove off the improved roadway and onto the left hand earthen berm.

Believing the minivan had just crashed, he activated his vehicle's overhead emergency lights and siren and drove southbound on the bypass to where the white vehicle was located. Upon his arrival he could see the minivan was still in motion on the left shoulder of the road. And, immediately behind the minivan was a black truck, also on the left shoulder of the road.

[Upon] his arrival at the scene the Trooper exited his vehicle and heard shouting voices as he proceeded around the back of the black truck. After rounding the truck he saw [Appellant] exiting his truck shouting at the driver of the minivan, who was also out of his vehicle.

The driver of the minivan had his hands raised at chest level and his body squared with [Appellant] while they were arguing. Simultaneously the Trooper saw [Appellant] reaching into [Appellant's] right rear pants pocket with his right hand while advancing towards the minivan driver[;] the Trooper believed that if he did not intercede a physical assault was imminent. All the while the Trooper was repeating orders for the two [men] to disengage, which went ignored. The Trooper had

to finally draw his weapon to get the two drivers to comply, and get down on the ground before the Trooper hand cuffed both men.

After both drivers were hand cuffed Trooper Gibson found a knife in [Appellant's] right rear pants pocket.

Once the scene was secured Trooper Gibson asked [Appellant] cursory questions of what was going on. While [Appellant] was informing [the trooper] of how the minivan driver was driving[, the trooper] noticed a strong odor of alcohol emanating from [Appellant's] breath. The Trooper also noticed that [Appellant's] speech was slurred, and while standing (unrestrained) [Appellant] was swaying with unsure footing.

Trooper Gibson entered [Appellant's] truck and moved it further off the road for safety reasons.

While moving [Appellant's] truck [the Trooper] noticed in plain view a wooden box on the center console which he recognized as [a] container to conceal a controlled substance.

Once the Trooper ascertained there was no safety threat to himself, the other responding officers and the general public[,] the hand cuffs were removed from both drivers.

After [Appellant] was unrestrained Trooper Gibson informed [Appellant] that he wanted to make sure [Appellant] could safely operate his vehicle and asked him to perform several field sobriety tests[,] which [Appellant] failed.

[Appellant] testified that he feared if he failed the field test(s) he would then be arrested.

After failing the field tests [Appellant] was offered a portable breath test, which [Appellant] voluntarily consented to and performed the test as instructed. The test results indicated he was over the limit.

Thereafter, [Appellant] was placed under arrest and Trooper Gibson read [Appellant] the DL-26 form.

[Appellant] informed Trooper Gibson that he understood the DL-26 form and voluntarily consented to have the blood test performed.

After [Appellant] was placed under arrest Trooper Gibson performed the required custodial inventory search of [Appellant's] vehicle before it was to be towed.[2] This search would have inevitably yielded the discovery of [Appellant's] drug paraphernalia containing suspected marijuana had it not already been seen in plain view.

Trial Court Opinion, 12/23/14, at unnumbered 4–6 (internal citation omitted).

Appellant filed an *omnibus* pretrial motion on October 25, 2012, seeking suppression of his statements that he had been drinking at the Veterans of Foreign War club and that the marijuana was his, as well as suppression of the contraband and BAC evidence. Following a hearing on January 11, 2013, the suppression court denied Appellant's motion. Order, 5/13/13. At a bench trial on December 16, 2013, the following evidence was admitted as stipulated facts: Affidavit of Probable Cause, Incident Report, Preliminary Hearing Notes of Testimony, Suppression Notes of Testimony, PennDoT Form DL-26 signed by Appellant; Drugscan Lab Report, and the chain of custody of Appellant's blood and test results. The documentation indicated that Appellant's BAC was 0.108% at the time his

_____

[2] At Appellant's preliminary hearing, defense counsel attempted to cross-examine Trooper Gibson regarding the presence of a tow truck at the scene. The Commonwealth objected because the questions were beyond the scope of direct examination. The magisterial district justice sustained the Commonwealth's objection. N.T. (Preliminary Hearing), 7/17/12, at 30.

blood was collected, and his blood tested positive for marijuana, a Schedule I controlled substance. After finding Appellant guilty, the trial court imposed a sentence of six months of intermediate punishment. Order, 1/9/14; Order, 4/25/14. Appellant filed a timely notice of appeal. Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents one question for our consideration, which we paraphrase as follows: "Did the suppression court err in admitting Appellant's statements and contraband evidence?" Appellant's Brief at 4. In addressing a challenge to the denial of a suppression motion, our standard of review:

> is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole.[3] Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where . . . the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if

---

[3] Our Supreme Court prospectively applied a new rule regarding the scope of review in suppression matters in *In re L.J.,* 79 A.3d 1073 (Pa. 2013). Specifically, the *L.J.* Court clarified that an appellate court's scope of review in suppression matters includes the suppression hearing record and **not** evidence elicited at trial. *Id.* at 1087. Because the suppression hearing in the case *sub judice* predates the decision in *L.J.*, that holding has no bearing on our review. *Commonwealth v. Hale*, 85 A.3d 570 (Pa. Super. 2014).

the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Perel*, 107 A.3d 185, 188 (Pa. Super. 2014) (quoting *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (citations omitted)).

Arguing for suppression, Appellant describes a very dramatic scene involving a rookie state trooper, deadly force, no jacket in thirty-nine-degree weather, asthma, lost police cruiser video footage, an unlawful arrest, and an illegal vehicle search. Contrarily, the suppression court found Trooper Gibson's version of events to be credible. Trial Court Opinion, 12/23/14, at unnumbered 1, 4, and 6. According to the suppression court:

> Trooper Gibson, accordingly, restrained both drivers while he conducted a temporary investigative detention.
>
> During an investigative detention Trooper Gibson was free to briefly stop, detain, and question the suspects, as he did with [Appellant].
>
> Once the scene was secured and the police had ascertained what had occurred, both drivers were unrestrained.
>
> Due to all the observations by Trooper Gibson, [he] had reasonable suspicion that [Appellant] was impaired, thus [Appellant] was subjected to field sobriety tests[,] which he failed.
>
> Thereafter, [Appellant] was arrested.
>
> [Appellant] voluntarily consented to be subjected to a blood test to ascertain the level of alcohol in his blood.
>
> Pennsylvania courts have long recognized that police are justified in investigating a situation, so long as the police

- 6 -

officer(s) reasonably believe that criminal activity is afoot. *Commonwealth v. Melson*, 556 A.2d 836 (Pa. Super. 1989). Likewise, it is well established that "the dictates of *Miranda* do not attach during an investigatory detention." *Commonwealth v. Kondash*, 808 A.2d 943, 948 (Pa. Super. 2002).

In the instant case Trooper Gibson had reasonable suspicion that criminal activity was afoot; and his original investigatory detention of [Appellant] was appropriate. Since an investigatory detention does not trigger *Miranda* requirements [Appellant's] statements made during the investigatory detention were properly admissible.

When Trooper Gibson smelled a strong odor of alcohol on [Appellant's] breath, observed [Appellant's] slurred speech and unsure footing[,] there is no question that he had sufficient probable cause under 75 Pa. C.S.A. 1547 to believe [Appellant] was operating his vehicle under the influence of alcohol. Participation in a breathalyzer test (or field sobriety test) is not the equivalent of an interrogation, nor is it a criminal proceeding. *Commonwealth v. Mordan*, 615 A.2d 102 (Pa. Super. 1992). During an interrogation, the objective is to obtain incriminating statements. *Id.* "Requiring a driver to perform physical tests or to take a breath analysis test does not violate the privilege against self-incrimination because the evidence procured is of a physical nature rather than testimonial, and therefore, no *Miranda* warnings are required." *Commonwealth v. Benson*, 421 A.2d 383, 387 (Pa. Super. 1980).

As a condition of maintaining a driver's license in Pennsylvania, all drivers are subject to the implied consent requirements of the Motor Vehicle Code and must submit to blood and breath tests under appropriate circumstances. *Commonwealth v. O'Connell*, 555 A.2d 873, 877 (Pa. 1989). Where an officer has reasonable grounds to believe that a motorist is driving while under the influence of alcohol, the driver may properly be requested to submit to a chemical test of blood, breath or urine to determine the alcoholic content of the blood. *Commonwealth v. McFarren*, 525 A.2d 1185 (Pa. 1987). Neither the Fourth Amendment bar against unreasonable searches and seizures nor Fifth Amendment privilege against self-incrimination prevents the Commonwealth from requiring a driver to submit to a breathalyzer test. *Commonwealth v. Hipp*, 551 A.2d 1086 (Pa. Super. 1988).

In the instant case Trooper Gibson had reasonable suspicion that [Appellant] was operating his vehicle while under the influence, accordingly, his request for field sobriety tests, breathalyzer test and blood analysis were appropriate as a matter of law. Further, in addition to the implied consent to submit to testing, [Appellant] freely gave actual consent to submit to the requested tests.

Accordingly, all the test results were properly admissible.

Trial Court Opinion, 12/23/14, at unnumbered 6–8.

In support of his position, Appellant first contends that all of the evidence should have been suppressed because his arrest was illegal. Appellant's Brief at 17. According to Appellant, the trooper lacked reasonable suspicion when he first arrived at the scene. *Id.* at 18. Appellant further argues that Trooper Gibson lacked probable cause to arrest him because the only evidence of suspected impairment was the odor of alcohol on Appellant's breath, which evidence was obtained after the trooper had placed Appellant in handcuffs. *Id.* at 18–19.

The Commonwealth responds that Trooper Gibson had reasonable suspicion to investigate the situation unfolding between Appellant and the other driver on the side of a busy highway. Commonwealth's Brief at 10. The Commonwealth further argues that the initial interaction between Appellant and Trooper Gibson was a stabilization of the volatile situation and an investigatory detention. *Id.* at 10–15. As Trooper Gibson interacted with Appellant, the Commonwealth asserts, probable cause ripened based on Appellant's breath, unstable balance, failure of field sobriety tests, and the

results of the breathalyzer test. Thus, the Commonwealth concludes, Appellant's arrest was lawful. *Id.* at 16–19.

Upon review, we agree with the Commonwealth. The suppression court found, and the record confirms, that Trooper Gibson responded to what he believed was a traffic accident. Criminal Complaint (Affidavit of Probable Cause), 4/3/12, at 6; N.T. (Preliminary Hearing), 7/17/12, at 5, 9; N.T. (Suppression), 1/11/13, at 13, 48. Upon arriving at the scene, Trooper Gibson had reasonable suspicion to believe that criminal activity was afoot when he observed Appellant reaching for his back pants pocket as he shouted at and moved toward the other driver. N.T. (Preliminary Hearing), 7/17/12, at 5–8; N.T. (Suppression), 1/11/13, at 18–20, 52–53. Additionally, as Trooper Gibson interacted with Appellant, the trooper had probable cause to believe that Appellant was impaired based on his breath, slurred speech, instability, field sobriety tests, and breathalyzer test. N.T. (Preliminary Hearing), 7/17/12, at 9–12; N.T. (Suppression), 1/11/13, at 22, 25–31, 32–34. Thus, we conclude that Appellant's arrest was legal.

Next, Appellant asserts that his statements should have been suppressed because Trooper Gibson did not administer *Miranda*[4] warnings. According to Appellant, he was placed under arrest when Trooper Gibson handcuffed him; therefore, any statements or evidence obtained after that

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

point were unlawful because the trooper did not advise Appellant of his constitutional rights. Appellant's Brief at 20. Contrarily, the Commonwealth contends that Appellant's formal arrest did not occur until after the breathalyzer test; therefore, Appellant's pre-arrest statements were not subject to **Miranda** warnings. Commonwealth's Brief at 21–24 (citing **Commonwealth v. Pakacki**, 901 A.2d 983, 988 (Pa. 2006)).

Again, we agree with the Commonwealth. Our Supreme Court "has declined to hold that every time an individual is placed in handcuffs that such individual has been arrested." **Commonwealth v. Guillespie**, 745 A.2d 654, 660 (Pa. Super. 2000) (citing **Commonwealth v. Carter**, 643 A.2d 61, 67 n. 2 (Pa. 1994)). "[F]or their safety, police officers may handcuff individuals during an investigative detention." **Commonwealth v. Rosas**, 875 A.2d 341, 348 (Pa. Super. 2005). Moreover, an investigatory detention does not trigger **Miranda** warnings. **Kondash**, 808 A.2d at 948; **see also Commonwealth v. Murray**, 936 A.2d 76, 81 (Pa. Super. 2007) (quoting **Kondash**).

Here, the suppression court found, and the record confirms, that Appellant and the other driver were placed in handcuffs to maintain the *status quo* and to stabilize a volatile situation. N.T. (Preliminary Hearing), 7/17/12, at 9; N.T. (Suppression), 1/11/13, at 20, 23, 58. Additionally, Appellant was not under arrest until the breathalyzer test results indicated that his BAC was above the legal limit; at that point, Trooper Gibson read

Appellant the implied consent warning. Criminal Complaint (Affidavit of Probable Cause), 4/3/12, at 6–7; N.T. (Preliminary Hearing), 7/17/12, at 11–12; **see also** N.T. (Suppression), 1/11/13, at 123 (Appellant testified that he was not under arrest until after the breathalyzer test). As discussed above, Trooper Gibson's original investigatory detention of Appellant was appropriate. Because an investigatory detention does not trigger **Miranda** warnings, Appellant's statements made during the investigatory detention were admissible. **Kondash**, 808 A.2d at 948; **Murray**, 936 A.2d at 81. Thus, Appellant's contrary claim lacks merit.

Appellant's third argument is that the contraband evidence should have been suppressed because the warrantless search of his vehicle was illegal. Appellant contends that Trooper Gibson did not conduct an inventory search and no exigent circumstances existed that would justify the trooper's search of Appellant's truck. Appellant's Brief at 21. The Commonwealth points out that Trooper Gibson did not charge Appellant with any drug offenses; therefore, any argument regarding the wooden box, the trooper's subsequent search of the vehicle, and recovery of suspected marijuana is moot. Commonwealth's Brief at 19. Alternatively, the Commonwealth submits that the contraband was in plain view, recovered during a valid inventory search, and subject to the inevitable discovery doctrine. **Id.** at 19–21 (citing **Commonwealth v. Brown**, 368 A.2d 626, 631 (Pa. 1976)).

Our review of the record confirms that Appellant was not prosecuted for or convicted of any drug offenses. Criminal Complaint, 4/3/12, at 2–4; Judgment of Sentence, 4/25/14. Consequently, evidence of the wooden box and marijuana did not contribute to his convictions, which were based on the breathalyzer test results and the blood test results. Criminal Complaint (Affidavit of Probable Cause), 4/3/12, at 6–7; N.T. (Preliminary Hearing), 7/17/12, at 11, 13–16, Exhibit C-1.

Moreover, "evidence that ultimately or inevitably would have been recovered by lawful means should not be suppressed despite the fact that its actual recovery was accomplished through illegal actions." *Commonealth v. Gonzalez*, 979 A.2d 879, 890 (Pa. Super. 2009). Here, the suppression court found and the record confirms that:

> the drug paraphernalia was located on [Appellant's] vehicle's [console] between the front seats, in plain view. However, even if the discovery of this drug paraphernalia was initially "illegal" the Commonwealth adequately proved it would have been inevitably discovered in the subsequent legal inventory search which was performed on [Appellant's] vehicle subsequent to [Appellant's] lawful arrest.

Trial Court Opinion, 12/23/14, at unnumbered 9. Thus, we conclude that Appellant's contraband challenge warrants no relief.

Appellant next argues that all of the evidence should have been suppressed because the trooper obtained it through coercion. Appellant's Brief at 25. According to Appellant, "[a]ll acts and behavior by the Trooper

- 12 -

in the instant case had the primary goal to elicit incriminating responses from Appellant, while Appellant was not free to go." *Id.* at 27.

We consider this argument to be a challenge to the weight of the Commonwealth's evidence, an elevation of Appellant's version of events over Trooper Gibson's version. We reiterate, "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super. 2006). As an appellate court, we cannot substitute our judgment for that of the finder of fact. *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). Here, the suppression court found Trooper Gibson's testimony to be credible. Trial Court Opinion, 12/23/14, at unnumbered 1, 4, and 6. We shall not re-weigh the evidence and substitute our judgment for that of the suppression court. *Gallagher*, 896 A.2d at 585; *Champney*, 832 A.2d at 408.

Finally, Appellant concludes that all of the evidence should have been suppressed based on the totality of the circumstances. Appellant's Brief at 27. According to Appellant, "[t]he record shows that a pattern of increasingly deficient and illegal methods used by the arresting Trooper compelled the logical conclusion to suppress the evidence." *Id.* at 27–28.

We agree with Appellant that a suppression court is required to "take into account the totality of the circumstances—the whole picture." *Navarette v. California*, ___ U.S. ___, 134 S.Ct. 1683 (2014). However,

- 13 -

we disagree that suppression was warranted in light of the totality of the circumstances at hand. The record supports the suppression court's findings, and its legal conclusions are without error. Therefore, Appellant's final challenge fails.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/8/2016