J-A06019-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RICHARD BURCH | : | |
| | : | |
| Appellant | : | No. 881 WDA 2020 |

Appeal from the Judgment of Sentence Entered July 9, 2020
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006004-2019

BEFORE: BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY LAZARUS, J.: **FILED: MAY 7, 2021**

Richard Burch appeals from the judgment of sentence, entered in the Court of Common Pleas of Allegheny County, following his convictions, after a non-jury trial, of two counts each of possession of firearm prohibited[1] and firearms not to be carried without a license;[2] one count each of possession of a controlled substance[3] and possession of marijuana;[4] and the summary offenses of failure to use a required turning signal[5] and parking improperly on

---

[1] 18 Pa.C.S.A. § 6105.

[2] 18 Pa.C.S.A. § 6106.

[3] 35 P.S. § 780-113(a)(16).

[4] 35 P.S. § 780-113(a)(31).

[5] 75 Pa.C.S.A. § 3334(a).

a two-way highway.[6] Burch challenges the court's denial of his pre-trial motion to suppress. After careful review, we vacate Burch's conviction for failing to use a required turning signal and affirm his remaining convictions and judgment of sentence.

On February 19, 2019, three plainclothes police officers driving an unmarked police vehicle in the Homewood neighborhood of Pittsburgh noticed a green[7] Jeep Grand Cherokee traveling at a fast rate of speed[8] in the same direction as their vehicle on North Homewood Avenue. N.T. Suppression Hearing, 11/13/19, at 6. The Jeep made a right-hand turn onto Hermitage Street in the direction of Brushton Avenue. Officer Justin Knight testified at the suppression hearing that Hermitage Street was a relatively narrow two-way street, without street markings and with parking on both sides of the street, such that the two-way traffic needed to sometimes "pull one way or the other" to allow oncoming vehicles from the other direction to pass,

---

[6] 75 Pa.C.S.A. § 3354(a).

[7] Burch testified that his Jeep is gray rather than green, *see* N.T. Suppression Hearing, 11/13/19, at 28, but stipulated that he was the driver of the vehicle in question. *Id.* at 8.

[8] The suppression court found that the Jeep was traveling at a rate faster than the posted speed limit. *See* Findings of Fact and Conclusions of Law, 1/7/20, at 2. There is no support in the record for this specific finding, since Officer Knight testified that he was too far away from the Jeep at that time to make any speed determination. *See* N.T. Suppression Hearing, 11/13/19, at 6 ("[F]rom that distance[,] I couldn't say with any degree of accuracy what its speed was, but it seemed to be traveling faster from that distance."). The officer never specified to what he was comparing the Jeep's speed, nor did he testify to the speed of his own vehicle.

"depend[ing] on how the cars [we]re parked." *Id.* at 19. The officers followed the Jeep and observed it "ma[k]e an evasive maneuver across Hermitage [S]treet," *id.* at 6, and travel from the "right lane . . . all the way over to the left lane and then park on the left-hand side of the traffic way[,] without signaling[,] and parked it against the flow of traffic. The other cars were facing I would say west, and [the Jeep] was facing east." *Id.* at 7. At that point, the officers turned on their lights and sirens and initiated a traffic stop. *Id.* at 7; 20; 27.

Officer Knight testified that he approached the vehicle from the rear-passenger side, and Officers Lucas Burdette and Nathan Dettling approached from the rear-driver's side. After confirming Burch's identity through his driver's license, the officers searched his name in a computer database and found that Burch had a revoked concealed carry permit. As the officers engaged with Burch, he became defensive, asking why he was stopped, and placed his hands on his body with his palms against his chest;[9] he began "reaching around his lap area and moving around a lot," *id.* at 10; he refused to answer the officers' questions about whether he had a permit to carry a firearm and whether there were any weapons in the Jeep at that time. *Id.* at

---

[9] Officer Knight testified that, based on his specialized training and experience, consisting of a two-day course at the Northeast Drug Training Center, an individual's placing of his hands against his body with his palms facing inwards against his chest is indicative of deception and evasiveness, whereas palms facing outwards is indicative of truthfulness. *See* N.T. Suppression Hearing, 11/13/19, at 10-11.

11-12. Out of concern for their own safety, the officers requested that Burch exit the Jeep,[10] and Burch complied. As he exited the vehicle, Burch admitted that there was a small amount of marijuana in the Jeep. The officers conducted a **Terry**[11] frisk of Burch's person, which failed to recover anything. Simultaneously, the officers conducted a wingspan search[12] of Burch's Jeep.

On the driver's seat of the vehicle, the officers recovered a black jacket with a white stripe, which was draped with the left-hand pocket between the driver's side door and seat, and the right-hand pocket hanging between the driver's seat and center console. In the left-hand pocket of the jacket, officers recovered a .45 caliber Glock firearm, and in the right-hand pocket, a .9mm Glock firearm. The officers then searched the rear of the vehicle and recovered a black leather bookbag which contained magazines that matched each of the weapons contained in the black jacket's pockets, as well as a digital scale with marijuana residue. In the front console under the Jeep's radio, the officers recovered approximately one gram of marijuana.

_____

[10] **See Pennsylvania v. Mimms**, 434 U.S. 106, 111 (1977) (police officer can, to protect own safety, order occupants to alight from vehicle that has been stopped for routine traffic offense).

[11] **See Terry v. Ohio**, 392 U.S. 1, 29 (1968) (police officer can, to protect own safety, conduct pat-down frisk search of individuals).

[12] **See Michigan v. Long**, 463 U.S. 1032, 1049 (1983) (police can, to protect own safety, search passenger compartment of automobile, limited to areas in which weapon may be placed or hidden, on reasonable suspicion that suspect is dangerous and may gain immediate control of weapon).

Upon arresting Burch, the officers conducted a search of his person incident to his arrest and recovered a loaded .9mm magazine in his left pants pocket and a loaded .45 auto magazine in his right pants pocket.[13] The track jacket containing the firearms, which was recovered on the driver's seat of the Jeep, matched the outer layer track pants that Burch was wearing in color, fabric, and style, including the white stripe.

On July 17, 2019, the Commonwealth charged Burch with the above-stated offenses, as well as use and possession of drug paraphernalia.[14] Burch filed a motion to suppress the recovered evidence, challenging the justification for the *Terry* frisk of his person, as well as the wingspan search of his Jeep. At the suppression hearing, the court permitted Burch to additionally challenge the validity of the stop. *See* N.T. Suppression Hearing, 11/13/19, at 3-4. The suppression court issued its findings of fact and conclusions of law on January 7, 2020, denying Burch's suppression motion.

At the conclusion of a non-jury trial, on March 4, 2020, the court found Burch guilty on all counts except for possession of drug paraphernalia. On July 9, 2020, the court sentenced Burch to 2 to 4 years' incarceration at each count of possession of firearms prohibited, ordered to run concurrently to each other, and a consecutive year of probation for possession of a controlled

---

[13] Officers Knight and Dettling testified at trial that Burch was wearing multiple layers of pants or shorts at the time of his arrest. *See* N.T. Nonjury Trial, 3/4/19, at 28; 57.

[14] 35 P.S. § 780-113(a)(32).

substance, with no further penalty at the remaining counts. On July 17, 2020, Burch filed a timely post-sentence motion challenging the weight of the evidence, which the court denied without a hearing on July 21, 2020. On August 20, 2020, Burch filed a timely notice of appeal to this Court. Burch and the trial court have complied with Pa.R.A.P. 1925.

On appeal, Burch presents the following issues for our review:

1. Did the trial court err in denying suppression since police lacked probable cause [to believe he had committed] any traffic violations prior to conducting a traffic stop?

2. To perform a *Terry* frisk or wingspan search of a vehicle, police must have a reasonable, articulable suspicion that an individual may be armed and dangerous. [Since *Terry* frisks and wingspan searches are forbidden] simply because a traffic stop occurs at nighttime in a high[-]crime area, did the trial court err under the Pennsylvania and Federal Constitutions in denying suppression for the pretext search here?

Appellant's Brief, at 5.

The standard of review for a challenge to the suppression court's ruling is well-settled:

[Appellate review of] a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where, as here, the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, "whose duty it is to determine if the

suppression court properly applied the law to the facts." ***Commonwealth v. Mistler***, 912 A.2d 1265, 1269 (Pa. 2006).

***Commonwealth v. Jones***, 988 A.2d 649, 654 (Pa. 2010) (some citations omitted). Consequently, on questions of law, we maintain a *de novo* standard of review, and our scope is plenary. ***Commonwealth v. Hicks***, 208 A.3d 916, 925 (Pa. 2019).

Burch first challenges the validity of the traffic stop. Burch argues that the police officers activated their lights and sirens to initiate the traffic stop prior to any parking infraction or turning signal violation occurring, and that the police, therefore, lacked the necessary probable cause to validate the stop under the Fourth Amendment to the United States Constitution, and Article 1, Section 8 of the Pennsylvania Constitution. We disagree.

Regarding the necessary quantum of proof police must maintain to initiate a traffic stop, we have previously explained:

> A police officer has the authority to stop a vehicle when he or she has **reasonable suspicion** that a violation of the [V]ehicle [C]ode has taken place, for the purpose of obtaining necessary information to enforce the provisions of the code. 75 Pa.C.S.[A.] § 6308(b). However, if the violation is such that it requires no additional investigation, the officer must have **probable cause** to initiate the stop.

***Commonwealth v. Brown***, 64 A.3d 1101, 1105 (Pa. Super. 2013) (citing ***Commonwealth v. Feczko***, 10 A.3d 1285, 1291 (Pa. Super. 2010)) (emphasis in original). ***See also Commonwealth v. Chase***, 960 A.2d 108, 115 (Pa. 2008).

Here, the suppression court credited Officer Knight's testimony that the officers initiated the traffic stop because Burch's Jeep crossed leftward from

the right lane across Hermitage Street, a two-way highway, and parked on the left side of the street, facing the opposite direction of the other parked cars—all in one motion—without using a turning signal. Each of these alleged Vehicle Code infractions required no further investigation, and as a result, the officers were required to have probable cause to initiate the stop. **See Brown**, **supra**.

Primarily, Burch challenges the validity of his stop due to his failure to use a required turning signal. Burch claims that, pursuant to 75 Pa.C.S.A. § 3334, a turning signal is required in three situations: (1) when turning; (2) when moving from one lane to another lane; and (3) when moving from a parked position into a lane of travel. Burch argues that, because none of these situations was present in the case *sub judice*, he was not required to use a turning signal. Appellant's Brief, at 17-25. We agree with Burch that section 3334 does not provide justification for the stop of Burch's Jeep.

Section 3334 governs the use of turning signals on Pennsylvania roadways, and states:

> **(a) General rule.** — Upon a roadway no person shall turn a vehicle or move from one traffic lane to another or enter the traffic stream from a parked position unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section.
>
> **(b) Signals on turning and starting.** — At speeds of less than 35 miles per hour, an appropriate signal of intention to turn right or left shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning. The signal shall be given during not less than the last 300 feet at speeds in excess of 35 miles per hour. The signal shall also be given prior to entry of the vehicle into the traffic stream from a parked position.

75 Pa.C.S.A. § 3334(a), (b).

In **Commonwealth v. Slattery**, 139 A.3d 221 (Pa. Super. 2016), this Court interpreted the term "turn" to apply only to situations in which a vehicle makes a turn onto another roadway, and not to those involving lane changes, which are addressed separately and specifically within the statute. **Id.** at 124. In **Commonwealth v. Tillery**, _ A.3d _, 1219 EDA 2019 (Pa. Super. 2021),[15] this court confirmed that section 3334(a) does not require use of a turning signal when exiting the flow of traffic or when "turning to pull into a parking space." **Id.** at *14.

Here, we agree with Burch that he was not required to use a turning signal, since he was not turning onto another roadway, **see Slattery**, **supra**, as he pulled the Jeep into a parking space. **See Tillery**, **supra**. Additionally, we glean from the record, and the parties agree,[16] that the road was unmarked and was not otherwise divided into marked lanes; Hermitage Street was narrow and practically consisted of one single travel lane shared by the vehicles traveling in both directions, with a parking lane on either side. We find that, because there was only one single lane of travel shared for both

---

[15] Following appellate oral argument, on March 31, 2021, Burch filed an application for post-submission communication pursuant to Pa.R.A.P. 2501(b), alerting this panel to the recent decision of this Court in **Tillery**. We granted that application on April 7, 2021.

[16] In its brief, the Commonwealth agrees to the facts as they are restated in Burch's appellate brief. **See** Appellee's Brief, at 2.

directions, Burch did not "move from one traffic lane to another[.]" 75 Pa.C.S.A. § 3334(a). Accordingly, Burch was not required to use a turning signal under these circumstances, and his failure to use one could not have justified the police stop.[17] Therefore, we must vacate Burch's conviction for the summary offense of failing to use a required turning signal.

Nevertheless, we find that the police stop was supported by valid probable cause because Burch parked the Jeep illegally on the left side of the street where the Jeep's right-hand wheels were not positioned within 12 inches of the right-hand curb.

Section 3354 governs the positioning of parked and standing vehicles on Pennsylvania roadways, and states:

> **(a) *Two-way highways.*** — Except as otherwise provided in this section, every vehicle standing or parked upon a two-way highway shall be positioned parallel to and with the right-hand wheels within 12 inches of the right-hand curb or, in the absence of a curb, as close as practicable to the right edge of the right-hand shoulder.
>
> **(b) *One-way highways.*** — Except as otherwise provided in this section, every vehicle standing or parked upon a one-way highway shall be positioned parallel to the curb or edge of the highway in the direction of authorized traffic movement with its right-hand wheels within 12 inches of the right-hand curb or, in the absence of a curb, as close as practicable to the right edge of the right-hand shoulder, or with its left-hand wheels within 12 inches of the left-hand curb or, in the absence of a curb, as close as practicable to the left edge of the left-hand shoulder.

---

[17] Since it was not considered by the suppression court, we decline to address whether, as Burch crossed into the left parking lane, he committed a violation of 75 Pa.C.S.A. § 3301(a) (Driving on right side of roadway), or § 3306(a) (Limitations on driving on left side of roadway).

75 Pa.C.S.A. § 3354(a), (b).

Section 3354 must be construed in accordance with the rules of statutory construction. **See In re Trust Under Agreement of Taylor**, 164 A.3d 1147, 1155 (Pa. 2017); **Tillery**, **supra** at *8-*9; 1 Pa.C.S.A. §§ 1921; 1922. We have previously noted that all sections of a statute must be read together, in conjunction with each other, and must be construed in consideration of the entirety of the statute. **Commonwealth v. Lopez**, _ A.3d _, 2021 PA Super 51 at *5-*8 (Pa. Super. 2021) (en banc).

Here, we conclude that, when reading section 3354 sequentially, and as a whole, as the rules of statutory construction direct, **see Lopez**, **supra** at *6-*7, it is clear that section 3354(a) requires vehicles, when parking or standing on two-way highways, to position the vehicle with the right-hand wheels within 12 inches of the right-hand curb or, in the absence of a curb, as close as practicable to the right edge of the right-hand shoulder.[18] 75

---

[18] Burch cites to our Supreme Court's decision in **Commonwealth v. DeWitt**, 608 A.2d 1030 (Pa. 1992), for the proposition that "nothing in [] section [3354] specifies the direction in which the vehicle must face." **Id.** at 1033; **see also** Appellant's Brief, at 16 n.3. Nevertheless, our Supreme Court's statement in that case was made in isolation and without reference to the text of the statute, and it did not affect the disposition of that case. Indeed, in **DeWitt**, the Court indicated that the vehicle in question was parked partially in a parking lot and partially on the berm of a road; however, the Court found that probable cause was lacking because there was no violation of section 3354 **where the vehicle's right-hand wheels were parked "very close" to the berm or shoulder**. **DeWitt**, **supra** at 1033. Moreover, without reference to a definitive front and rear of the vehicle, section 3354's use of the terms "right-hand" and "left-hand" would be uncertain. **See** 1 Pa.C.S.A. §§ 1922(2); **see also e.g.**, 75 Pa.C.S.A. § 3301(a) (specifying vehicles shall

Pa.C.S.A. § 3354(a). Burch would have us conclude that the statute should be interpreted such that all vehicles on **any** roadway must be parked within 12 inches of the curb or shoulder on **either** side of the roadway; this reading is far from the clear intention of the statute. Indeed, the language of section 3354(b), regarding the possibility of standing or parking on the **left side** of the road **on one-way highways** would be rendered mere surplusage if we were to construe section 3354(a) as Burch suggests. *See* 75 Pa.C.S.A. § 3354(b) (". . . or with its **left-hand wheels within 12 inches of the left-hand curb** or, in the absence of a curb, as close as practicable to the **left edge of the left-hand shoulder**") (emphasis added); *see also* 1 Pa.C.S.A. § 1922(2).

Here, Burch was driving on Hermitage Street, a two-way highway, *see* 75 Pa.C.S.A. § 3354(a), and pulled his Jeep into the left parking lane, positioning the Jeep such that it was facing the opposite direction of the other cars that were parked on that same side of the street. Burch, standing or parked,[19] positioned the Jeep with his right wheels well outside of the

_____

be driven upon right half of roadway except in specific situations); §§ 4303(a) (requiring head lamps be equipped on "every vehicle"), (b) (requiring rear lighting be equipped on "every vehicle"); § 4524(a) (requiring unobstructed front windshield providing driver with clear view); *cf. Dewitt* at 1032-33 (noting officers did not observe how vehicle arrived at its position, and whether it was operated in violation of Vehicle Code ).

[19] Contrary to Burch's claims, *see* Appellant's Brief, at 17 n.4, it is irrelevant that the officers did not wait to ascertain whether Burch pulled over to "park" or "stand" before initiating the traffic stop. *See* 75 Pa.C.S.A. § 102 (defining

- 12 -

permitted 12-inch distance from the right-hand curb or shoulder, since he pulled the Jeep over into the left side parking lane of Hermitage Street. **See** 75 Pa.C.S.A. § 3354(a) ("**[E]very vehicle standing or parked upon a two-way highway shall be positioned parallel to and with the right-hand wheels within 12 inches of the right-hand curb or**, in the absence of a curb, as close as practicable to the right edge of **the right-hand shoulder**.") (emphasis added); **cf. Commonwealth v. DeWitt**, 608 A.2d 1030, 1033 (Pa. 1992) (vehicle's right-hand wheels were parked very close to berm or shoulder).

Moreover, insofar as Burch claims that the police initiated their lights and sirens prior to his bringing the Jeep to a stop, we note that "we may only consider the evidence of the Commonwealth and so much of the evidence for the defense as remains **uncontradicted when read in the context of the whole record**." **See Jones**, **supra** (emphasis added). As a result, we must disagree with Burch that police officers initiated their lights and sirens prior to his car pulling over and coming to a stop. N.T. Suppression Hearing, 11/13/19, at 7 (police officer testifying officers "didn't activate [their] emergency lights or sirens, but [they] went towards the vehicle in an attempt to get close to it to possibly engage it in a traffic stop"); **id.** at 20 (officer

---

"stand" or "standing" as "the halting of a vehicle, whether occupied or not, except momentarily for the purpose of and while actually engaged in receiving or discharging passengers"); **see also** 75 Pa.C.S.A. § 3354(a) ("Except as otherwise provided in this section, **every vehicle standing or parked** upon a two-way highway **shall** . . .") (emphasis added).

testifying "When [Burch] pulled over to park we turned the lights and siren on.  Officer Dettling was driving, and I turned the lights on."); *id.* at 27 ("Correct[, before Burch went over and crossed the traffic lane and parked, all in one motion, the police lights were not on at all].").

Because the officers observed Burch commit a violation of section 3354(a) of the Vehicle Code when he positioned his Jeep on the left side of the two-way highway, the officers had the necessary probable cause to initiate the traffic stop.  *See Brown*, *supra*.  Consequently, the suppression court correctly found that the stop of Burch's vehicle was justified by the record.  *See Jones*, *supra*.

Next, Burch challenges the justification for the *Terry* frisk and wingspan searches of his vehicle.  Burch argues that, at the suppression hearing, Officer Knight failed to explain why he thought there was a weapon on Burch's person or within his wingspan reaching distance.  *See* Appellant's Brief, at 26.  We disagree and find that Officer Knight enunciated sufficient particularized facts to justify the searches based on reasonable suspicion and officer safety.

As already noted, police officers may, for their own safety, request that drivers alight from their vehicles and may conduct pat down frisks and wingspan searches of those drivers on a finding of reasonable suspicion.  *See supra* at n.10, 11, & 12.  *See also Mimms*; *supra*, *Terry*, *supra*; *Long*, *supra*.  *See also Commonwealth v. Morris*, 644 A.2d 721, 723 (Pa. 1994) (citing *Long*, *supra*) ("[A]reasonable belief based on specific articulable actions taken by appellant (i.e. specific articulable facts) entitles an officer to

conduct a search of those portions of the passenger compartment of a suspect's vehicle in which a weapon could be placed."). Our Supreme Court has previously explained that an officer's reasonable suspicion is evaluated under the totality of the circumstances. *See Commonwealth v. Holmes*, 14 A.3d 89, 95-96 (Pa. 2011).

> Reasonable suspicion is a less stringent standard than probable cause necessary to effectuate a warrantless arrest, and depends on the information possessed by police and its degree of reliability in the totality of the circumstances. In order to justify the seizure, a police officer must be able to point to "specific and articulable facts" leading him to suspect criminal activity is afoot. *Commonwealth v. Melendez*, [], 676 A.2d 226, [] 228 (Pa. 1996) (citing *Terry*, *supra*). In assessing the totality of the circumstances, courts must also afford due weight to the specific, reasonable inferences drawn from the facts in light of the officer's experience and acknowledge that innocent facts, when considered collectively, may permit the investigative detention. *Commonwealth v. Cook*, [] 735 A.2d 673, 676 ([Pa.] 1999)[.]

*Holmes*, *supra* at 95 (brackets omitted).

Here, at the suppression hearing, Officer Knight testified that the officers stopped Burch in a high-crime neighborhood[20] at nighttime, that Burch

---

[20] Although residents of high crime areas are equally protected under the constitution, *see Commonwealth v. Barr*, 240 A.3d 1263, 1291 (Pa. Super. 2020) (Strassburger, J., concurring) (people who live in "high crime" areas do not have fewer constitutional rights than people who have the means to live in "nice" neighborhoods), the suppression court may, nevertheless, consider that factor within the totality of the circumstances when determining if reasonable suspicion exists for a stop. *See*, *e.g.*, *Commonwealth v. Jefferson*, 853 A.2d 404, 406 (Pa. Super. 2004) (citing *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)) (high crime area insufficient alone to support finding of reasonable suspicion, yet, when combined with unprovoked flight, satisfies that standard). In this case, Officer Knight testified that he was patrolling the "far east end in the Homewood area of the City of Pittsburgh"

became defensive,[21] asked why they had stopped him, and placed his hands in a deceptive position on his body with his palms against his chest. Further, Burch began reaching around his lap area and moving around a lot, and he redirected the officers' questions about whether he had a permit to carry a firearm and whether there were any weapons in the Jeep. These factors, in combination with the officer's experience and knowledge that Burch had a revoked license-to-carry permit,[22] as well as the facts that the officers

___

where "there are homicides, uniform firearm violations, open air drug sales, and officers have been shot there. Officer[s] have been murdered there. It's probably one of worst areas I have seen in my 34 years of living." N.T. Suppression Hearing, 11/13/19, at 5.

[21] This Court, sitting en banc, noted that most people are "agitated to some extent when stopped by police, even if the driver is a law-abiding citizen[.] Whether described as nervousness, apprehension, concern[,] or otherwise, forced interaction with a police officer is not an everyday occurrence for the average citizen." *Commonwealth v. Cartagena*, 63 A.3d 294, 305-06 (Pa. Super. 2013) (en banc).

[22] At the suppression hearing, the Commonwealth's attorney argued that the suppression court should consider Burch's revoked license to carry as weighing in favor of a finding of reasonable suspicion because

> It's more likely that a person with a license will have a firearm or at one time did have a firearm.

> [Also], consider the fact that the license was revoked. Obviously, there are other reasons that it could be revoked, but it's a factor in the totality of the circumstances that this individual could be dangerous, and it could have been revoked for criminal conduct.

> \* \* \*

> The reasonable suspicion that goes towards that also justifies a wingspan search inside the vehicle.

observed the Jeep's possible speeding on North Homewood Avenue, and its deceptive driving and parking maneuvers, wherein Burch's Jeep pulled over on the wrong side of Hermitage Street, provided the officers with the necessary reasonable suspicion to require Burch to alight from the Jeep, conduct a *Terry* frisk of his person, and conduct a simultaneous wingspan search of his vehicle, for their own safety. *See Morris*, *supra*; *Mimms*, *supra*; *Terry*, *supra*; *Long*, *supra*. *See also Commonwealth v. Buchert*, 68 A.3d 911, 915 (Pa. Super. 2013) (finding reasonable suspicion where police conducted traffic stop at night and defendant reached under seat before exhibiting extreme nervousness); *Compare Commonwealth v. Simmons*, 17 A.3d 399, 404 (Pa. Super. 2011) (finding reasonable suspicion where police conducted traffic stop at night in high drug and high crime area, and defendant reached down towards floor and reached across chest and officer believed such movements were consistent with concealing gun); and *Commonwealth v. Murray*, 936 A.2d 76, 80 (Pa. Super. 2007) (finding reasonable suspicion where traffic stop occurred at night and in high-narcotics area, defendant's vehicle had tinted windows, and defendant made "a lot of movement in the vehicle" as officer was approaching); *with Commonwealth v. Arrington*, 233 A.3d 910, 917 (Pa. Super. 2020) (finding no reasonable suspicion where stop occurred at night, in high crime area, defendant had revoked concealed-

_____

N.T. Suppression Hearing, 11/13/19, at 41-42.

carry permit, but did not make furtive movements or display extreme nervousness); and **Commonwealth v. Cartagena**, 63 A.3d 294, 307 (Pa. Super. 2013) (en banc) (finding no reasonable suspicion where stop occurred at night, vehicle had tinted windows, and defendant appeared extremely nervous, but did not make furtive movements and was not stopped in high crime area). Consequently, the **Terry** search of Burch's person and the wingspan search of his vehicle were both supported by reasonable suspicion. **See Morris**, **supra**; **Holmes**, **supra**. As a result, the suppression court correctly found that the stop of Burch's vehicle was justified by the record. **See Jones**, **supra**.

Conviction for failing to use a required turning signal vacated. Remaining convictions and judgment of sentence affirmed.[23] Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/07/2021

---

[23] Because the trial court imposed no further penalty for Burch's failure to use a turning signal, we need not remand for resentencing. **See Commonwealth v. Lekka**, 210 A.3d 343, 358-59 (Pa. Super. 2019) (where correction does not upset sentencing scheme and no further action is required by sentencing court, remand for resentencing is unwarranted).