J-A13002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CURTIS WALTON | : | |
| | : | |
| Appellant | : | No. 2136 EDA 2021 |

Appeal from the Judgment of Sentence Entered September 7, 2021
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0000991-2020

BEFORE: OLSON, J., DUBOW, J., and KING, J.

MEMORANDUM BY OLSON, J.:                    **FILED SEPTEMBER 08, 2022**

Appellant, Curtis Walton, appeals from the judgment of sentence entered on September 7, 2021, following his stipulated bench trial convictions for persons not to possess a firearm and carrying a firearm without a license.[1] We affirm Appellant's convictions and remand for resentencing consistent with this decision.

We briefly summarize the facts and procedural history of this case as follows. On January 3, 2020, Officer Kevin Fritchman, an officer with over nine years' experience, was on patrol in a marked police car at the corner of Wayne Avenue and Scott Alley in Norristown, Montgomery County, Pennsylvania. Trial Court Opinion, 1/5/2022, at 1. The locality was described as a "hot spot" and "high crime area" where shots had been fired and two men

---

[1]  18 Pa.C.S.A. §§ 6105 and 6106, respectively.

had been arrested for firearms violations in the proceeding two-month period. *Id.* At 7:12 p.m. on the day in question, Officer Fritchman observed a silver Audi automobile, with heavily tinted windows, park in front of a laundromat. *Id.* at 2. Appellant, the driver, and a female passenger alighted from the vehicle and entered the laundromat. *Id.* Officer Fritchman searched the National Crime Information Center database for vehicle information and learned the automobile was owned by Appellant and that his license was suspended. *Id.* Approximately four minutes later, Appellant returned to the vehicle by himself and drove away. *Id.* Officer Fritchman initiated a traffic stop of the vehicle based upon Appellant's "operation of the vehicle [with] a suspended license, as well as the vehicle's heavily tinted windows."[2] *Id.* Officer Fritchman ordered Appellant, several times, to roll down all of the car's windows to ensure police safety. *Id.* After approximately 30 seconds, Appellant opened his car door and leaned out. *Id.* As Officer Fritchman approached Appellant's vehicle, the officer instructed Appellant to close the door and, again, commanded Appellant to roll down all of the windows. *Id.* Appellant told Officer Fritchman that he had to turn on the engine to comply. *Id.* Appellant turned on the car's engine and rolled all of the windows down. *Id.* Officer Fritchman approached the vehicle and asked Appellant for his driver's license, car registration, and proof of insurance. *Id.* at 3. Appellant

---

[2] These violations constitute summary offenses under the Motor Vehicle Code. *See* 75 Pa.C.S.A. §§ 4107 (violation of vehicle equipment standards) and 1543 (driving while operating privilege is suspended or revoked), respectively. Those charges are not at issue herein.

produced registration and insurance information but did not have his driver's license. *Id.* Officer Fritchman returned Appellant's documents, but had not issued Appellant a citation for the Motor Vehicle Code violations. *Id.* "During this time, Officer Fritchman observed that [Appellant] appeared very nervous, with trembling hands and labored breathing." *Id.* Officer Fritchman asked Appellant if there were any firearms or weapons in the vehicle and Appellant responded that there were not. *Id.* Officer Fritchman asked, and Appellant consented, to a search of the vehicle. *Id.* "At this point, [Appellant] started to shuffle and move about the vehicle's interior, reaching [near] his pocket, and then turning and starting to reach towards a blanket on the vehicle's rear seat." *Id.* Officer Robert Nolan arrived on-scene, approached Appellant's vehicle from behind on the passenger side, noticed two small caliber bullets on the vehicle's rear passenger seat, and alerted Officer Fritchman. *Id.* Officer Fritchman instructed Appellant to stop reaching toward his pocket and exit the vehicle. *Id.* When Officer Fritchman conducted a protective pat-down of Appellant, Appellant "forced his body flat against the vehicle's side […] as if to prevent the officer's hands from reaching [Appellant's] front waistband." *Id.* Officer Fritchman directed Appellant to cooperate and then felt what he recognized immediately as the barrel of gun in Appellant's waistband. *Id.* When Officer Fritchman recovered a .32 caliber revolver, Appellant "spontaneously uttered, 'I just got myself 10 more years.'" *Id.* at 4. Appellant confirmed that he had a prior felony conviction when Officer Fritchman asked Appellant him if he were eligible to possess a firearm. *Id.* Once Appellant

was in police custody, Officer Fritchman confirmed Appellant had a prior felony conviction. *Id.*

The Commonwealth charged Appellant with the aforementioned firearms violations, as well as driving with a suspended license. On September 18, 2020, Appellant filed a motion to suppress the evidence recovered from his vehicle and his statements to the police. The trial court held a suppression hearing on July 7, 2021 and denied relief by order entered on July 14, 2021. On September 7, 2021, the trial court held a stipulated bench trial and convicted Appellant of persons not to possess a firearm and carrying a firearm without a license. Appellant waived the preparation of a presentence investigation report and proceeded directly to sentencing wherein he presented character witness evidence and exercised his right to allocution. The trial court imposed a sentence of six-and-one-half to 13 years of imprisonment for persons not to possess a firearm. The trial court also imposed a concurrent term of five to 10 years of imprisonment for carrying a firearm without a license. On September 17, 2021, Appellant filed a post-sentence motion challenging the discretionary aspects of sentencing. The trial court denied relief by order entered on September 23, 2021. This timely appeal resulted.[3]

_____

[3] Appellant filed a timely notice of appeal on October 15, 2021. The trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely on November 9, 2021. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 5, 2022.

On appeal, Appellant presents the following issue for our review:

Whether the trial court erred in denying [A]ppellant's [m]otion to [s]uppress [e]vidence which challenged the lawfulness of the continuation of a traffic stop after [A]ppellant was pulled over for driving with a suspended license?

Appellant's Brief at 4.

In sum, Appellant argues:

The officers involved in this case failed to articulate facts and observations that g[a]ve rise to a reasonable belief that [A]ppellant was engaged in criminal activity or any other violation of the law other than the traffic infraction which was the basis of the initial vehicle stop. Accordingly, officers did not have a reasonable suspicion to prolong the traffic stop beyond that which was necessary to address the initial traffic violation.

Appellant submits that because the continued seizure of [A]ppellant was unlawful, the items found by searching Appellant are the fruits of the poisonous tree and should have been suppressed.

*Id.* at 6. More specifically, citing *Commonwealth v. Sierra*, 723 A.2d 644 (Pa. 1999), Appellant claims that because the police in this matter returned Appellant's "paperwork" or his "registration and insurance card," the officers' continued interrogation of Appellant amounted to an illegal detention. *Id.* at 8-9. Appellant argues that "not lowering his windows immediately" and the officers' belief that Appellant appeared nervous did not provide the police with "reasonable suspicion needed to escalate a traffic stop." *Id.* at 9. Appellant also contends his consent to search the vehicle, "given moments after the unlawful investigative detention began, was not voluntary." *Id.* at 11-13.

- 5 -

Our Supreme Court previously determined the standard of review governing an order denying a motion to suppress:

Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Where [] the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the [trial] court[] below are subject to our plenary review.

*Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010) (internal citations and quotations omitted).

Here, Appellant does not contest the initial traffic stop. Instead, the crux of Appellant's claim is that officers lacked reasonable suspicion to prolong the traffic stop and extend Appellant's detention and that the items recovered by the police were subject to suppression.

Appellant's claim compels us to examine each facet of the interaction between Appellant and the investigating officers to determine whether the officers' actions independently possessed lawful justification. We begin with Officer Fritchman's decision to order Appellant from the vehicle and to search Appellant's person and the passenger compartment of his vehicle for weapons.

- 6 -

This aspect of the challenged encounter implicates the principles first announced in *Terry v. Ohio*, 392 U.S. 1 (1968).  Because the record supports Officer Fritchman's determination that Appellant may have been armed and dangerous during the traffic stop, we conclude that the officer lawfully ordered Appellant out of his vehicle and conducted a valid search of Appellant's person and the passenger compartment of Appellant's vehicle.  Since this encounter yielded a gun, we next consider whether the officers were justified in investigating whether Appellant's possession of a firearm was unlawful.  Here, we conclude that specific, articulable facts (in addition to Appellant's concealed possession of a firearm in public) established reasonable grounds to suspect that Appellant's possession of a gun was unlawful.  Accordingly, we conclude that Officer Fritchman lawfully detained Appellant to investigate and confirm whether his possession of a firearm constituted an offense.

> A *Terry* frisk is a type of investigative detention requiring reasonable suspicion that criminal activity is afoot and that 'the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others. The purpose of a *Terry* frisk is not to discover evidence of a crime, but to protect the police officer conducting the investigation.
>
> The reasonable suspicion necessary to conduct a *Terry* frisk and, in fact, all investigative detentions
>
>> is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.

The determination of whether an officer had reasonable suspicion that criminality was afoot so as to justify an investigatory detention is an objective one, which must be considered in light of the totality of the circumstances. In assessing the totality of the circumstances, a court must give weight to the inferences that a police officer may draw through training and experience. Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.

*Commonwealth v. Davis*, 102 A.3d 996, 999–1000 (Pa. Super. 2014)

(internal quotations and citations omitted).

We previously explained the application of *Terry* within the context of a

lawful traffic stop.

[…P]rotection of police and others can justify protective searches when police have a reasonable belief that the suspect poses a danger, that roadside encounters between police and suspects are especially hazardous, and that danger may arise from the possible presence of weapons in the area surrounding a suspect. *These principles compel our conclusion that the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant" the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons*. *See Terry* [*v. Ohio*, 392 U.S. [1], at 21. "The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*, at 27.

*Commonwealth v. Murray*, 936 A.2d 76, 78-79 (Pa. Super. 2007) (some

citations and original brackets omitted; emphasis in original); *see also*

*Commonwealth v. Morris*, 619 A.2d 709, 711–712 (Pa. Super. 1992)

("Concern over the safety of our police officers mandates that a police officer maintain the authority to order a driver out of a vehicle" and "is not an unreasonable seizure when balanced against legitimate concerns for the officer's safety."); *see also Commonwealth v. Graham*, 721 A.2d 1075, 1077 (Pa. 1998) (a "police officer may still legitimately seize a person ... and conduct a limited search of the individual's outer clothing in an attempt to discover the presence of weapons which might be used to endanger the safety of the police officer and others, if the police officer observes unusual and suspicious conduct on the part or the individual seized which leads him to reasonably conclude that criminal activity may be afoot and that the person with whom he is dealing may be armed and dangerous").

Moreover, this Court has recognized:

> When, during already dangerous traffic stops, officers must approach vehicles whose occupants and interiors are blocked from view by tinted windows, the potential harm to which the officers are exposed increases exponentially, to the point, we believe, of unconscionability. *Indeed, we can conceive of almost nothing more dangerous to a law enforcement officer in the context of a traffic stop than approaching an automobile whose passenger compartment is entirely hidden from the officer's view by darkly tinted windows.* As the officer exits his cruiser and proceeds toward the tinted-windowed vehicle, he has no way of knowing whether the vehicle's driver is fumbling for his driver's license or reaching for a gun; he does not know whether he is about to encounter a single law-abiding citizen or to be ambushed by a car-full of armed assailants. He literally does not even know whether a weapon has been trained on him from the moment the stop was initiated.

> *United States v. Stanfield*, 109 F.3d 976, 981 (4ᵗʰ Cir. 1997), *cert. denied*, 522 U.S. 857 (1997) (emphasis in original).

\* \* \*

- 9 -

Specifically, the knowledge of the neighborhood being a well-known narcotics area, when coupled with [] excessive movement inside the vehicle and hour of night, raise[s] serious and obvious safety concerns that justifie[s] a search for weapons. *See*, *e.g.*, *United States v. Caruthers*, 458 F.3d 459, 466 (6th Cir. 2006), *cert. denied*, 549 U.S. 1088 (2006) (furtive movements made in response to a police presence may properly contribute to an officer's suspicions); *United States v. Evans*, 994 F.2d 317, 321 (7th Cir. 1993), *cert. denied*, 510 U.S. 927, (1993) (officers properly executed a *Terry* search on driver and car when driver leaned forward as if reaching or concealing something).

*Id.* at 79-80.

Here, the trial court determined:

[I]n this case, the totality of the circumstances [clearly provided Officer Fritchman with reasonable suspicion that Appellant was attempting to conceal something, that Appellant might be armed and dangerous, and that a weapons patdown for officer safety was necessary. The record established the following: Appellant was present in a high crime area], where [Officer] Fritchman was specifically dispatched to conduct a directed patrol for reports of recent gunshots; the heavily tinted windows of [Appellant's] vehicle; [Appellant's] inexplicably slow response to [Officer] Fritchman's simple repeated commands to lower his windows and apparent attempt to exit the vehicle instead of rolling down the windows as directed; [Appellant's] extreme nervousness, trembling hands, and breathlessness, [Appellant's] failure to produce a driver's license; [and, Appellant's fumbling, shuffling movements about the vehicle after having consented to its search, including] reaching toward his pocket area and then to the rear of the vehicle where a blanket concealed [two] bullets[.]

[Appellant] would have [the trial court] analyze whether reasonable suspicion existed, as if each of the above-referenced events occurred in discrete segments as opposed to an analysis of the totality of circumstances in real time[.]

Trial Court Opinion, 1/5/2022, at 7-8 (case citations omitted).

In view of the trial court's uncontested factual findings, **Terry** permitted the officers to remove Appellant from his vehicle and conduct a weapons search of Appellant's person and the passenger areas of Appellant's car. Appellant's entire interaction with police lasted "[m]aybe a minute to two minutes." N.T., 7/7/2021, at 38. Officer Fritchman, an officer with nine and one-half years of experience, was directed to patrol a "hot spot" known for gun violence. **Id.** at 6-8. Officer Fritchman initiated a traffic stop[4] because Appellant's car windows were "heavily tinted" and he learned Appellant was driving with a suspended license. **Id.** at 9-10. Officer Fritchman commanded Appellant to roll down all of his windows because he could not see into the vehicle, did not know how many people were in the vehicle, and was "concern[ed] that somebody might exit with a firearm and shoot." **Id.** at 11-12. Officer Fritchman "yelled multiple times, very loud, to roll down all the windows. Approximately 30 seconds went by. At that time, [Officer Fritchman] believe[d] that [Appellant] was trying to hide something illegal in the vehicle at the time." **Id.** at 13. Instead, Appellant opened his car door and peeked out. **Id.** For his safety, Officer Fritchman told Appellant to get back into the car. **Id.** at 14. Once the officer approached, he noticed Appellant appeared extremely nervous, was breathing heavily, and his hands were trembling. **Id.** at 15. Officer Fritchman asked Appellant if there were weapons in the vehicle, Appellant replied no, but consented to a vehicle

---

[4] We note that Appellant does not challenge the legality of the initial traffic stop.

search. *Id.* Before Appellant was removed from the vehicle, he made furtive movements towards his pocket and a blanket on the back seat and Officer Nolan noticed two bullets in plain view in the rear of the vehicle. *Id.* at 15-16. Officer Fritchman ordered Appellant to step out of the vehicle and when he told Appellant to put his hands on the roof of the car to conduct the frisk, Appellant "pushed himself – his whole body – forward right against the car" as though "he was trying to conceal [the front of his body so that Officer Fritchman] couldn't reach around the front of [Appellant's] person." *Id.* at 17. Officer Fritchman then recovered a firearm from Appellant's waistband when conducting a protective frisk. *Id.* at 16-17. *Terry* permitted this search for weapons, which yielded a gun.

This analysis does not conclude our review of the trial court's suppression ruling, however. In *Commonwealth v. Hicks*, 208 A.3d 916 (Pa. 2019), our Supreme Court explained that an individual's mere possession of a concealed firearm in public does not, *per se*, support a reasonable suspicion that criminal activity is afoot under the totality of circumstances and, relatedly, does not permit continued detention for further inquiry. In *Hicks*, the Court found

> no justification for the notion that a police officer may infer criminal activity merely from an individual's possession of a concealed firearm in public. [...I]t is not a criminal offense for a license holder [] to carry a concealed firearm in public. Although the carrying of a concealed firearm is unlawful for a person statutorily prohibited from firearm ownership or for a person not licensed to do so, *see* 18 Pa.C.S.A. §§ 6105-6106, there is no way to ascertain an individual's licensing status, or status as a

- 12 -

prohibited person, merely by his outward appearance. As a matter of law and common sense, a police officer observing an unknown individual can no more identify whether that individual has a license in his wallet than discern whether he is a criminal. Unless a police officer has prior knowledge that a specific individual is not permitted to carry a concealed firearm, and absent articulable facts supporting reasonable suspicion that a firearm is being used or intended to be used in a criminal manner, there simply is no justification for the conclusion that the mere possession of a firearm, where it lawfully may be carried, is alone suggestive of criminal activity.

*Hicks*, 208 A.3d at 936–937 (footnote omitted).

Here, however, Officer Fritchman articulated facts beyond Appellant's mere possession of a gun which showed that Appellant unlawfully possessed the firearm. The notes of testimony from Appellant's suppression hearing establish that, once the firearm was recovered, Appellant spontaneously stated, "I got myself another ten years." *Id.* N.T., 7/7/2021, at 17. Officer Fritchman "asked [Appellant] what does that mean, do you have a prior felony, and [Appellant] said yes." *Id.* After Appellant admitted that he had a felony conviction which disqualified him from possessing a firearm, Officer Fritchman acquired articulable facts which supported a reasonable suspicion that Appellant's possession of the firearm was unlawful. Hence, Officer Fritchman attained lawful justification to detain Appellant for further inquiry.

Under the totality of the circumstances here, *Terry* permitted a weapons search within a context of a lawful, and unchallenged, traffic stop. Thereafter, specific and articulable facts emerged, beyond Appellant's mere possession of a weapon, to support Officer Fritchman's inference that criminal activity was afoot. These facts justified the continued detention of Appellant

- 13 -

for further inquiry. *See Hicks, supra.* Because the challenged detention and search were legally justified, Appellant's consent is legally irrelevant and the trial court did not error in denying suppression.

Moreover, we reject Appellant's reliance on *Commonwealth v. Sierra*, 723 A.2d 644, 645 (Pa. 1999), as we find that case to be distinguishable. In *Sierra*, the police observed Sierra speeding. *See Sierra*, 723 A.2d at 645. Our Supreme Court determined that once the police returned Sierra's driver's license and vehicle registration **and issued a warning for speeding**, Sierra was free to leave. *Id.* (emphasis added). However, "[g]iven the circumstances surrounding the encounter" including that "two officers continued to surround the vehicle" and that an officer "exerted continued pressure on the driver by repeating the same question despite having received a negative response to his initial inquiry" was "such that no reasonable person would have felt free to terminate the encounter." *Id.* Here, unlike in *Sierra*, the initial traffic stop had not concluded. While Officer Fritchman returned Appellant's vehicle registration and proof of insurance, he had yet not issued a citation for the vehicular violations. N.T., 7/7/2021, at 38-39. In short, the traffic encounter here was not resolved. Moreover, because Appellant was driving with a suspended license, the police would not have allowed him simply to drive away and, instead, would have towed and impounded the vehicle. *Id.* at 39. We conclude that this was not a situation where the initial traffic stop had concluded, but the police continued to coerce and detain Appellant.

Finally, we note that "[i]n preparing the record for review," the trial court recognized that "the [five] to 10[-]year sentence imposed on Count Two, [firearms not to be carried without a license,] a third-degree felony, exceeds the statutory maximum, and as such, remand is warranted for resentencing on that count." Trial Court Opinion, 1/5/2022, at 4, n.10. We agree. "The legality of a criminal sentence is non-waivable, and this Court may raise and review an illegal sentence *sua sponte*." ***Commonwealth v. Pi Delta Psi, Inc.***, 211 A.3d 875, 889 (Pa. Super. 2019) (citation omitted). "[W]here an appellate [c]ourt determines a sentence is illegal or otherwise improper, the Court may not superimpose its judgment on the trial court by directing the sentence to be imposed." ***Commonwealth v. Holiday***, 954 A.2d 6, 10 (Pa. Super. 2008) (citation omitted). As such, while we affirm Appellant's convictions, we remand the case for resentencing.

Convictions affirmed. Remand for resentencing consistent with this decision. Jurisdiction relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/8/2022*

- 15 -