J-S02026-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RANDY OSCAR SEVERINO | : | |
| | : | |
| Appellant | : | No. 1114 MDA 2022 |

Appeal from the Judgment of Sentence Entered July 1, 2022
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0002748-2021

BEFORE:  PANELLA, P.J., OLSON, J., and DUBOW, J.

MEMORANDUM BY OLSON, J.:                    **FILED APRIL 24, 2023**

Appellant, Randy Oscar Severino, appeals from the judgment of sentence entered on July 1, 2022, following his bench trial convictions for persons not to possess a firearm, possession of a firearm with an altered or obliterated manufacturer's number, and carrying a firearm without a license.[1] We affirm.

The trial court set forth the facts of this case as follows:

> While on duty [at approximately 9:50 p.m.] on July 29, 2021, Criminal Investigators [("CI")] James Gresh, Christopher Blauser, and Josiah Fischer, of the Reading Police Department Vice Unit, were driving, in an undercover police vehicle, behind a red Chevrolet Aveo in the 400 block of Walnut Street when the investigators noticed the rear passenger side tail[-]light was not functioning properly.  The vehicle pulled into a parking space on Walnut Street.  [T]he investigators [] activate[d] the lights and sirens on the [police] vehicle and approached the [Aveo] because of the issue with the tail[-]light[.]

---

[1]  18 Pa.C.S.A. §§ 6105(a)(1), 6110.2(a), and 6106(a)(1), respectively.

The investigators were in plainclothes but also wore black bulletproof vests over their clothing that clearly displayed the word "Police" in reflective letters on the front and back of the vest. They were also carrying their badges and firearms. The driver of the vehicle was William Morales, and the passenger was [Appellant], Randy Severino. CI Fischer interacted with the driver and CI Blauser interacted with [Appellant]. CI Blauser noticed that [Appellant] was sweaty, visibly nervous, appeared agitated and was talking in circles during their interaction. CI Blauser told [Appellant] to relax and instructed him to stop making furtive movements. [Appellant] continued to make furtive movements toward his knees and waist. He was then directed by CI Blauser to exit the car. [Fearing for officer safety,] CI Blauser performed a pat down of [Appellant and] felt a firearm in [Appellant's] waistband. While removing [Appellant's] belt to retrieve the firearm, the firearm fell down the leg of [Appellant's] pants. The firearm was recovered by CI Gresh who was standing with [Appellant] and CI Blauser. The firearm was a loaded black 9 mm Barretta APX handgun with an obliterated serial number.

Trial Court Opinion, 3/7/2022, at *1-2 (unpaginated). The police immediately arrested Appellant.

Thereafter, the case proceeded as follows:

On October 21, 2021, [Appellant] filed a [counseled] motion to suppress evidence obtained during the search of his person on July 29, 2021, alleging that the stop of the vehicle was improper, and that the removal of [Appellant] from the vehicle and resulting search of his person were [] independently improper. A hearing was held on the motion on January 5, 2022. On March 4, 2022, the motion was denied. [Appellant] proceeded to a bench trial on July 1, 2022 at which he was convicted of [the aforementioned crimes]. On the same date, [the trial court imposed] an aggregate sentence of four (4) to eight (8) years of incarceration[.] On July 11, 2022, [Appellant filed] a post [-]sentence motion [which the trial court] denied without a hearing on July 13, 2022.

Trial Court Opinion, 9/7/2022, at 1 (footnote omitted). This timely appeal

resulted.[2]

On appeal, Appellant presents the following issues for our review:

A. Whether the lower court committed an error of law by entering an order denying [Appellant's] motion to suppress evidence and [petition for] writ of *habeas corpus* [] since the stop of the motor vehicle was unlawful as the law enforcement officers lacked probable cause of a violation of the Pennsylvania Motor Vehicle Code[?]

B. Whether the lower court committed an error of law by entering an order denying [Appellant's] motion to suppress evidence and [petition for] writ of *habeas corpus* [] as the search of Appellant was not supported by reasonable suspicion that Appellant was armed and dangerous[?]

Appellant's Brief at 8 (unnecessary capitalization omitted).

Both of Appellant's issues challenge the suppression court's rulings. The

standard of review for the denial of a motion to suppress evidence is as

follows:

An appellate court's standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the suppression court's factual findings are

_____

[2] Appellant filed a notice of appeal on August 8, 2022. The trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on August 9, 2022. On August 24, 2022, Appellant timely complied. The trial court filed an opinion pursuant to Pa.R.A.P. 1925(a) on September 7, 2022 that relied largely upon its earlier decision denying Appellant's motion to suppress filed in March 2022.

supported by the record, the appellate court is bound by those findings and may reverse only if the court's legal conclusions are erroneous. Where ... the appeal of the determination of the suppression court turns on allegations of legal error, the suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to plenary review.

***Commonwealth v. Bernard***, 218 A.3d 935, 940 (Pa. Super. 2019) (citation omitted). "Moreover, appellate courts are limited to reviewing only the evidence presented at the suppression hearing when examining a ruling on a pre-trial motion to suppress." ***Commonwealth v. Ranson***, 103 A.3d 73, 76 (Pa. Super. 2014) (citation omitted).

Appellant contends the trial court erred in determining that the police had probable cause to conduct the motor vehicle stop at issue and, subsequently, that the police had reasonable suspicion to conduct a protective frisk of Appellant upon a reasonable suspicion that Appellant was armed and dangerous. ***See*** Appellant's Brief at 15. We will examine those contentions in turn.

First, Appellant argues that there was insufficient evidence to conclude that the driver was not in compliance with 75 Pa.C.S.A. § 4303(b)[3] in order to justify the traffic stop. More specifically, Appellant posits:

_____

[3] General Lighting Requirements, Section 4303(b) provides, in pertinent part:

(b) Rear lighting.--Every vehicle operated on a highway shall be equipped with a rear lighting system including, but not limited to,

*(Footnote Continued Next Page)*

J-S02026-23

First, the vehicle was appropriately equipped with a rear lighting system, including a rear lamp, rear reflector, stop lamp and license plate lights. There is no testimony that any of the lighting systems were not illuminat[ed] except for the rear tail-light. The officers testified that they were traveling behind the Chevrolet Aveo approximately fifty (50) feet on Walnut Street, traveling in a forward motion. There is no indication by the officers that the tail-light would not operate if the car was placed in reverse or if the tail-light would illuminate[] when the emergency four way lights turned on. As such, there is no indication by the testimony that the rear tail-light was ever in a position which would have triggered illumination of the tail-light or that it did not illuminate when it should have. There is simply no evidence [to support the officers' belief that the tail-light did not function or illuminate properly].

\* \* \*

For the reasons set forth above the officers lacked probable cause to stop the vehicle, the stop of the Chevrolet Aveo was illegal and not authorized by law.

Appellant's Brief at 20-21.

"The issue of what quantum of cause a police officer must possess in order to conduct a vehicle stop based on a possible violation of the Motor Vehicle Code is a question of law, over which our scope of review is plenary and our standard of review is *de novo*." ***Commonwealth v. Prizzia***, 260 A.3d 263, 267 (Pa. Super. 2021) (citation and brackets omitted). "For a stop based on the observed violation of the Vehicle Code or otherwise non-investigable offense, an officer must have probable cause to make a

---

rear lamps, rear reflectors, stop lamps and license plate light, in conformance with regulations of the department. If a vehicle is equipped with a centrally mounted rear stop light, a decal or overlay may be affixed to the centrally mounted rear stop light if the decal or overlay meets all applicable State and Federal regulations.

75 Pa.C.S.A. § 4303(b).

- 5 -

constitutional vehicle stop." *Id.* (citation omitted). "Pennsylvania law makes clear that a police officer has probable cause to stop a motor vehicle if the officer observes a traffic code violation, even if it is a minor offense." *Id.* (citation omitted).

Here, the suppression court found credible testimony that "[w]hile traveling behind the red Aveo on Walnut Street, the investigators noticed the rear passenger side tail[-]light was not functioning properly [and] under 75 Pa.C.S.A. § 4303(b) provided probable cause that a traffic code violation was occurring." Trial Court Opinion, 3/7/2022, at *3 (unpaginated). We agree. CI Blauser testified that while driving "approximately 50 feet" behind the subject vehicle, he conducted a traffic stop "for a nonfunctioning rear passenger side tail[-]light." N.T., 1/5/2022, at 5. He further clarified that "the rear tail[-]light in the lower left corner was[ not] working, it was[ not] illuminating, there was no light coming from it." *Id.* CI Gresh testified similarly, noting that he "observed a nonfunctioning passenger side tail[-]light" wherein "[n]ot all of the bulbs in the light were working properly." *Id.* at 20. The suppression court credited this testimony, and we will not usurp that determination as there is support for it in the record.[4] Hence, we conclude that the suppression court properly determined that the police had

---

4  Moreover, we conclude that the statute fairly implies that a tail-light must fully function when the vehicle is moving forward and, therefore, reject Appellant's argument that there was no evidence that the tail-light would not operate if the car were in reverse or when emergency flashers were activated. Evidence that the tail-light was not operating when the vehicle was moving forward was sufficient to support the traffic stop.

probable cause to conduct a traffic stop for a violation of Section 4303(b). *See Commonwealth v. Sebek*, 716 A.2d 1266, 1270 (Pa. Super. 1998) ("[T]he undisputed evidence provided by the trooper's testimony establishe[d] that the appellant's motorcycle's tail[-]light was not functioning. …Failing to have a working tail[-]light is a violation of 75 Pa.C.S.A. § 4303(b). The trooper, therefore, had clearly articulable and reasonable grounds to have suspected a Vehicle Code violation, which justified the stop of appellant's motorcycle."). Accordingly, Appellant's first issue lacks merit.

Next, Appellant argues that "[t]he police officers search and seizure of [his person] was unconstitutional because "the officers lacked reasonable suspicion that he was armed and dangerous." Appellant's Brief at 22. Appellant concedes that the police conducted a protective frisk based upon: "(1) nervousness and fidgeting, (2) sweat forming on his neck, and (3) left hand [motions] towards his left knee." *Id.* at 25. However, Appellant opines:

> Prior to the search there is no indication that the officers observed any additional criminal activity or observed any weapons. There is no indication that the stop occurred in a high crime area. The testimony never indicates that Appellant was reaching for items or attempting to gain access to any items, it merely states that his left hand would move towards his left knee. Under the theory of the Commonwealth, any movement, but for remaining entirely still for the duration of the questioning would amount to reasonable suspicion for officer safety.

*Id.* at 25-26.

Our Supreme Court has expressly recognized that an officer conducting a valid traffic stop may order all of the occupants of a vehicle to alight to assure his or her safety. *See Commonwealth v. Freeman*, 757 A.2d 903,

907 n.4 (Pa. 2000). Moreover, with regard to vehicular stops and searches, our Supreme Court has clearly stated that "[o]ur constitutional safeguards do not require an officer to gamble with his life." ***Commonwealth v. Morris***, 422, 644 A.2d 721, 724 (Pa. 1994). While an officer may order both drivers and passengers out of a lawfully stopped vehicle, the officer's right to perform a weapons search is governed by ***Terry v. Ohio***, 392 U.S. 1, 30 (1968), which we shall now review.

We have previously explained:

It is hornbook law that the Fourth Amendment to the United States Constitution, as well as Article I, § 8 of the Pennsylvania Constitution, protect citizens from unreasonable searches and seizures. Warrantless searches and seizures ... are unreasonable *per se*, unless conducted pursuant to specifically established and well-delineated exceptions to the warrant requirement. One such exception, the [***Terry***], "stop and frisk," permits a police officer to briefly detain a citizen for investigatory purposes if the officer "observes unusual conduct which leads him to reasonably conclude, in light of his experience, that criminal activity may be afoot." ***Terry***, 392 U.S. at 30.

***Terry*** further held that "when an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a pat down search "to determine whether the person is in fact carrying a weapon." ***Terry***, 392 U.S. at 24.... The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.

In order to conduct an investigatory stop, the police must have reasonable suspicion that criminal activity is afoot. ***Terry***, 392 U.S. at 30. In order to determine whether the police had reasonable suspicion, the totality of the circumstances—the whole picture—must be considered. Based upon that whole picture, the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.

> To conduct a pat down for weapons, a limited search or "frisk" of the suspect, the officer must reasonably believe that his safety or the safety of others is threatened. If either the seizure (the initial stop) or the search (the frisk) is found to be unreasonable, the remedy is to exclude all evidence derived from the illegal government activity. The **Terry** totality of the circumstances test applies to traffic stops or roadside encounters in the same way that it applies to typical police encounters.

**Commonwealth v. Arrington**, 233 A.3d 910, 915–916 (Pa. Super. 2020) (some quotations, some citations, and all original brackets omitted).

Under the totality of circumstances test referenced in **Terry**, late night stops, furtive movements, and nervousness can support an officer's justified belief that an individual is armed and dangerous. As noted by the **Arrington** Court,

> we have held that a defendant's "furtive movement of leaning forward and appearing to conceal something under his seat, along with his extreme nervousness and [a] night time stop, was sufficient to warrant a reasonable police officer to believe that his safety was in danger and that [the defendant] might gain immediate control of a weapon." [**Commonwealth v.**]**Buchert**, 68 A.3d [911,] 916-917 [(Pa. Super. 2013)]; **see also Commonwealth v. Simmons**, 17 A.3d 399, 401 (Pa. Super. 2011) (finding reasonable suspicion where the traffic stop was conducted at night, in a high-drug and high-crime area, and the officer witnessed the defendant make the furtive movement of reaching under his seat and then towards his chest, consistent with concealing a weapon); **In re O.J.**, 958 A.2d 561, 566 (Pa. Super. 2008) (finding reasonable suspicion where the traffic stop occurred at night, the defendant initially failed to stop his vehicle when signaled by police, and the defendant made "rapid and furtive hand movements over the vehicle's console," which had been left partially opened); **Commonwealth v. Murray**, 936 A.2d 76, 80 (Pa. Super. 2007) (finding reasonable suspicion where the traffic stop occurred at night and in a high-narcotics area, the defendant's vehicle had tinted windows, and the defendant made "a lot of movement in the vehicle" as the officer was approaching).

> In contrast, this Court in **Commonwealth v. Cartagena**, 63 A.3d 294 (Pa. Super. 2013), found that an officer lacked reasonable suspicion to conduct a warrantless search of a vehicle where (1) the stop occurred at night, (2) the defendant's vehicle had tinted windows, and (3) the defendant appeared "extremely nervous." **Id.** at 304. The **Cartagena** court noted that there was no testimony indicating that the defendant had made furtive movements, that the stop occurred in a high-crime area, or that the police saw any weapons in the vehicle prior to conducting the search. **Id.** at 304-306; **see also Commonwealth v. Moyer**, 954 A.2d 659, 669-670 (Pa. Super. 2008) (holding that evidence that a vehicle's occupants engaged in furtive movements and appeared nervous was insufficient to establish reasonable suspicion); **Commonwealth v. Reppert**, 814 A.2d 1196, 1206 (Pa. Super. 2002) (same).

**Arrington**, 233 A.3d at 916–917 (original brackets omitted).

Here, the suppression court concluded that, "[u]nder the totality of the circumstances," "[t]he criminal investigator gave specific articulable facts" showing "there was a reasonable suspicion to perform a pat down of [Appellant] for officer safety." Trial Court Opinion, 3/7/2022, at *3 (unpaginated). More specifically,

> [Appellant] was sweaty, visibly nervous, appeared agitated, and was talking in circles during [police] interaction. CI Blauser told [Appellant] to relax and instructed him to stop making furtive movements. [Appellant] continued to make movements toward his knees and waist. CI Blauser had reasonable suspicion for the safety of himself and the other investigators. The determination [] to pat down [Appellant] was appropriate.

**Id.** at *4 (unpaginated).

Upon review of the record and applicable law, we discern no abuse of discretion or error of law in determining that the protective frisk of Appellant was proper. Here, CI Blauser testified that he initiated the subject traffic stop

- 10 -

**at night**, at approximately 9:50 p.m. N.T., 1/5/2022, at 4 and 11 (emphasis added). "Upon initial contact, [Appellant] appeared to be very nervous[,] he was fidgeting around in his seat[,]" and visible "sweat [was] forming on his neck." *Id.* at 7. "[M]ultiple times" Appellant "would go towards his left knee for no reason." *Id.* CI Blauser advised Appellant "as to why the vehicle had been stopped, to try to kind of put him at ease, but as the interaction went on, **his behaviors became more pronounced**." *Id.* (emphasis added). CI Blauser told Appellant "to keep his hands visible" to the police officers. *Id.* CI Blauser then asked Appellant to step out of the vehicle because CI Blauser "wanted to conduct a pat down of his person, make sure he was[ not] armed just for [] safety, [] based on the behaviors he was exhibiting." *Id.* CI Cresh confirmed that CI Blauser told Appellant to "relax" and "keep his hands where he could see them." *Id.* at 21. When Appellant failed to comply with police instructions during a nighttime traffic stop, continued exhibiting nervousness including visibly sweating, and continually made furtive movements toward his leg despite being told not to, such evidence was sufficient to warrant a reasonable police officer to believe that his safety was in danger and that Appellant might gain immediate control of a weapon.[5] As such, we discern no

_____

[5] We specifically reject Appellant's reliance on **Commonwealth v. Reppert**, 814 A.2d 1196 (Pa. Super. 2002) (*en banc*). **See** Appellant's Brief at 25-26. In that case, the traffic stop to address an infraction of Motor Vehicle Code had already concluded when the police asked Reppert, a backseat passenger, to alight the vehicle for a protective frisk. **Reppert**, 814 A.2d at 1203. The **Reppert** Court determined that an illegal detention occurred when the police
*(Footnote Continued Next Page)*

trial court error or abuse of discretion and Appellant's second issue pertaining to suppression lacks merit.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>04/24/2023</u>

_____

ordered Reppert out of the vehicle in question when "Reppert's hands remained in plain view throughout the encounter, [and police] ordered him to step out of the car based on suspicion of his head and shoulder movements prior to the stop and his nervous appearance during the stop[.]" ***Id.*** at 1199. This Court further recognized that although Reppert had "bulges in [his] front pocket" that "Reppert's pockets were not visible from outside the car as his lap was covered with a sandwich throughout the traffic stop [] and[, therefore, the police] could not rely on the appearance of Reppert's pockets when [] ordered [] to exit the car, [and, thus,] the [suppression] court erred in concluding that the bulging of the pockets contributed to the existence of reasonable suspicion." ***Id.*** at 1204. This case is distinguishable because, as set forth in detail above, Appellant continuously made furtive movements towards a location where a firearm could be concealed, was sweating profusely, and his actions continued and became more pronounced as the encounter ensued. Furthermore, the ***Reppert*** Court did not specify the time of day that encounter occurred, but, here, the traffic stop occurred at nighttime and could be considered in determining reasonable suspicion under the totality of circumstances.